**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| ENCRYPTPAT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:26-cv-227 |
| | ) | |
| v. | ) | **Complaint for Patent Infringement** |
| | ) | |
| GOOGLE LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff EncryptPat, LLC ("EncryptPat" or "Plaintiff"), for its Complaint against

Defendant Google LLC, (referred to herein as "Google" or "Defendant"), alleges the following:

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. § 1 et seq.

**THE PARTIES**

2.     Plaintiff EncryptPat is a limited liability company organized under the laws of the

Commonwealth of Virginia with a place of business at 3000 Portofino Circle, Unit 103, Palm

Beach Gardens, FL 33418.

3.     Upon information and belief, Google is a wholly-owned subsidiary of Alphabet,

Inc., and a Delaware limited liability company, with an established place of business at 500 West

2nd Street, Austin, Texas 78701 at which Google can be served with process.  Upon information

and belief, Google sells, offers to sell, and/or uses products and services throughout the United

States, including in this judicial district, and introduces infringing products and services into the

1

stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

7. On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute because Defendant purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, because Defendant regularly conducts and solicits business within the State of Texas and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and this District.

8. On information and belief, Google resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District. For example, on information and belief, Google has invested $20 million to build a corporate office at 500 West 2nd Street, Austin, Texas 78701.

9. On information and belief, Google or its affiliates and subsidiaries maintain physical facilities and employ numerous people in the Western District of Texas, including regular and established places of business in Austin at 500 West Second Street, Austin, Texas 78701; 601

West Second Street, Austin, Texas 78701; 901 East Fifth Street, Austin, Texas 78701; and 100 Congress Avenue, Austin, Texas 78701.

10.     On information and belief, Google's Austin offices exceed 550,000 square feet and are being expanded, with Google announcing in March 2025 that it would occupy the entire Sail Tower (Block 185) at 601 West Second Street under a long-term lease.  On information and belief, these facilities support Corporate Engineering, Google Cloud, People Operations, and other technical roles.

11.     On information and belief, Google opened a Google Store at 11701 Domain Blvd, Austin, Texas 78758 in May 2025, where it offers to sell and sells the Accused Instrumentalities (Google Pixel phones and Pixel Watches), and performs demonstrations on how to use the Accused Instrumentalities, which infringe claims of the Asserted Patents.  On information and belief, Google employees at this Google Store demonstrate, set up, configure, and support the Accused Instrumentalities, including the features accused of infringement herein.

12.     On information and belief, Google also sells the Accused Instrumentalities through authorized retailers in this District, including Best Buy, Target, and Walmart locations such as those in Austin, Texas, Waco, Texas, Midland, Texas and Odessa, Texas.

13.     On information and belief, Google also conducts substantial research and development, engineering, firmware development, hardware testing, integration, and related activities in this District concerning the Accused Instrumentalities and components thereof specially configured to perform the features accused of infringement herein, including auto-lock functionalities that rely on encrypted communications between the smartphone and smartwatch, hardware security modules (such as the Titan security chip or equivalent) and supporting

software and firmware. On information and belief, at least some of these activities occur at Google's facilities in Austin, Texas.

14. For example, on information and belief, Google recruits for and employs engineers in Austin for roles specific to the Pixel Watch (including electrical engineering and firmware), hardware reliability testing for custom silicon in consumer devices, embedded systems and firmware development, manufacturing test engineering, and security engineering. Such work supports the design, testing, integration, and validation of secure communication protocols, encryption features, and device-locking mechanisms used in the Accused Instrumentalities.

## BACKGROUND

### The Inventor and the Invention

15. Charles M. Leedom, Jr. is a distinguished engineer, inventor, and patent attorney whose pioneering contributions to wireless communications technologies have spanned more than five decades. Mr. Leedom is a named inventor on over 30 patents world-wide, none of which have ever been found invalid. Mr. Leedom earned a Bachelor of Science degree in Engineering Science from Purdue University in 1966, where he was inducted into the nation's most prestigious engineering and academic honor societies, including Tau Beta Pi, Omicron Delta Kappa, Iron Key, and Phi Eta Sigma. Mr. Leedom also earned a Juris Doctor degree with honors from The George Washington University Law School in 1969. He began his professional career as a Patent Examiner with the United States Patent and Trademark Office, acquiring firsthand expertise in the patent examination process before entering private practice. Mr. Leedom had an accomplished career as a patent attorney in private practice.

4

16.     Mr. Leedom formed his first tech company in the 1990s after a multiyear involvement with small Texas tech firm called Spectrum Information Technology Inc.  Spectrum was the first company to develop a practical wireless modem for portable computers. Spectrum's technology was widely adopted by the modem industry including most of the major modem chip manufacturers.

17.     In the early 2000s, Mr. Leedom—aware of the growing security risks relating to use of everyday portable wireless devices—contemplated how to make portable wireless devices easier to use without compromising their security.  Cellular phones were becoming smaller, more powerful and ubiquitous, yet they remained surprisingly vulnerable.  A lost or stolen phone often could be used immediately by anyone to make calls, send messages, access accounts, or conduct financial transactions, because the only "protection" was often a simple password that most users never bothered to enable.  Mr. Leedom recognized that the real problem was that the device itself had no reliable way to know whether its user was the rightful owner.  He wanted a practical solution that would make a phone "know" it was in the right hands without forcing the user to do anything complicated and without compromising overall security.

18.     Sometime before June 2006, and long before Google's launch of its PIXEL® watches and smartphones, Mr. Leedom had a key insight.  He realized that a reliable way to verify identity was to link the phone to something the owner almost never removed from his or her body—something small, unobtrusive, and always present, such as a wristband or watch-like device.  He envisioned a body-mounted component that could wirelessly broadcast encryption keys (i.e., secret codes that could be changed over time) using short-range, wireless communication.  The phone could use them to unlock its secure functions such as, for example, making calls, sending messages, or handling sensitive data.  If the phone was ever moved out of

the vicinity of the body-mounted device (for example, if it was left behind, lost, or stolen), it could automatically lock itself down, disabling outgoing calls, messages, or other critical functions.  When the phone detects the smartphone in its vicinity, it could automatically unlock features, thereby making it easier to use.  This technical approach solved a core problem of device security without having to rely on the user remembering passwords or carrying extra cards.

19.     Mr. Leedom's inventions are disclosed and claimed in U.S. Patent No. 11,375,366 B2 (the "'366 patent")(a copy of which is attached hereto at Exhibit 1), U.S. Patent No. 11,622,265 B2 (the "'265 patent") (a copy of which is attached hereto at Exhibit 2), U.S. Patent No. 11,647,385 B2 (the "'385 patent") (a copy of which is attached hereto at Exhibit 3), and U.S. Patent No. 12,015,913 B2 (the "'913 patent") (a copy of which is attached hereto at Exhibit 4), (collectively, the "Asserted Patents").

20.     The Asserted Patents resulted from Mr. Leedom's pioneering efforts in the area of security systems for handheld wireless devices.  At the time of these pioneering efforts, the most widely implemented technology used to address secure communication and reliable unique user identification/authentication on handheld wireless devices such as cellular telephones was conventional password/PIN protection on cell phones, or none at all.  In that type of system, encryption keys were stored directly on the handset itself, passwords were frequently disabled or ignored by users, and a lost or stolen device remained fully operational allowing unauthorized access, financial transactions, or communications.   Devices used public key infrastructure (PKI), and PKI operations were cumbersome, computationally intensive, and inconvenient for widespread mobile adoption. Mr. Leedom conceived of the inventions claimed in the Asserted Patents as a way to solve these and other problems by pairing a body-mounted key generating

6

component, like a smartwatch, which wirelessly broadcasts secret or private keys within the immediate proximity to a separate handheld wireless device, like a smartphone, that uses those keys, automatically disabling features when separated from the authorized user.

21.    Today, anyone who has used a smartwatch to unlock a smartphone or has seen a phone disable itself when separated from its paired wearable will instantly recognize Mr. Leedom's early vision.  It is not merely an abstract idea but a concrete, workable system that has become commonplace in modern wireless technology—yet it originated with Mr. Leedom years before the industry adopted these same features.

22.    Mr. Leedom's inventive contributions have been widely adopted and integrated throughout the wireless communications industry, delivering tangible benefits to consumers, businesses, and technology providers worldwide.  His patented technologies have become ubiquitous features in modern smartphones, mobile networks, and connected devices, powering the seamless connectivity and advanced security capabilities that millions of users rely upon every day.

**Advantages Over the Prior Art**

23.    The patented inventions disclosed in the Asserted Patents provide many advantages over the prior art, and in particular improved the operations of a mobile device. For example, by using two separate components, one body mounted permanently or semi-permanently and the other a hand-held device, it is possible to achieve relative immunity from unscrupulous attack while preserving substantial user convenience.  (*See, e.g.*, Ex. 1 at col. 22:14–19.)

24.    Another advantage of the patented inventions is  "capitaliz[ing] on the product 'vector' . . .  to implement and disseminate a new type of communication standard and

infrastructure employing encryption technology in a manner that is highly immune from attack and yet is relatively convenient to use." (*See, e.g.*, Ex. 1 at col. 7:1–20.)

25.     Another advantage of the inventions is that a cellular handset can be designed to become inoperable when it is more than a certain minimum distance from the body mounted key generating component. (*See, e.g.*, *id*. at col. 11:25–29.)

26.     Because of these significant advantages that can be achieved through the use of the patented inventions, EncryptPat believes that the Asserted Patents present significant commercial value for companies like Google.  Indeed, Google incorporates EncryptPat's inventions into its mobile electronic devices, including mobile smartphones and smartwatches, such as those marketed under the GOOGLE PIXEL® brand (PIXEL is a registered trademark of Google), that are used, made, offered for sale, sold, and/or imported by Google in the United States and supplied by Google to customers in the United States.  On information and belief, Google has derived revenues from unauthorized use of EncryptPat's inventions of hundreds of millions of dollars.

**Technological Innovation**

27.     The patented inventions disclosed in the Asserted Patents resolve technical problems related to secure wireless communications and cryptographic authentication for handheld wireless devices, particularly problems related to the utilization of encryption keys and key management in portable wireless systems.  As the Asserted Patents explain, one of the limitations of the prior art related to secure communication and unique user identification on handheld wireless devices.  Encryption techniques had failed to deliver on the promise of secure communication.  Lost or stolen devices fully operational and vulnerable to unauthorized access,

while conventional PKI implementations were computationally burdensome and inconvenient for widespread mobile adoption.  (*See, e.g.*, Ex. 1 at col. 8:7-17.)

28.    The claims of the Asserted Patents do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the Asserted Patents recite inventive concepts that are deeply rooted in engineering technology and overcome problems specifically arising out of how to secure communication and unique user identification on handheld wireless devices.

29.    In addition, the claims of the Asserted Patents recite inventive concepts that improve the functioning of mobile wireless devices, particularly secure wireless communications and cryptographic authentication.

30.    Moreover, the claims of the Asserted Patents recite inventive concepts that are not merely routine or conventional use of encryption technology.  Instead, the patented inventions disclosed in the Asserted Patents provide new and novel solutions to specific problems related to improving secure wireless communications and cryptographic authentication.

31.    And finally, the patented inventions disclosed in the Asserted Patents do not preempt all the ways that secure wireless communications and cryptographic authentication may be used to improve the portable wireless devices, nor do the Asserted Patents preempt any other well-known or prior art technology.

32.    Accordingly, the claims in the Asserted Patents recite a combination of elements sufficient to ensure that the claim in substance and in practice amounts to significantly more than a patent-ineligible abstract idea.

**The Accused Instrumentalities**

33.     The Accused Instrumentalities include all Google products and services that practice claims of the Asserted Patents.  For example, Google has included and includes specialized circuitry, hardware, and software in the Accused Instrumentalities that can automatically lock or unlock features on a smartphone based on communications between it and a smartwatch.  Google has marketed and/or markets such features as, among other things, "SMART LOCK[1]," "WATCH UNLOCK[2]," "LOCK PHONE WHEN LEFT BEHIND[3]," "NEARBY UNLOCK[4]" and "EXTEND UNLOCK[5]."

34.     Google encourages its customers to use it and teaches its customers how to use these features in a manner that infringes the Asserted Patents through its marketing and online support.

<strong>COUNT I – INFRINGEMENT OF THE '366 PATENT</strong>

35.     Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

36.     Plaintiff is the sole owner of the '366 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages. The written description of the '366 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and

---

[1] https://www.androidpolice.com/what-is-nearby-unlock-how-different-from-smart-lock/ (Ex. 9.)
[2] https://support.google.com/googlepixelwatch/answer/13387340?hl=en (Ex. 10.)
[3] https://support.google.com/googlepixelwatch/answer/16996880?hl=en (Ex. 11.)
[4] https://www.androidpolice.com/what-is-nearby-unlock-how-different-from-smart-lock/ (Ex. 9.)
[5] https://support.google.com/android/answer/9075927?hl=en  (Ex. 12.)

improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.    Plaintiff and its predecessors in interest are not subject to the requirements of 35 U.S.C. § 287(a) with respect to the '366 patent, and Plaintiff is entitled to damages for Google's past infringement.

38.    Google has directly (literally and equivalently) and, at least as of the date of this Complaint,  contributorily infringed, and induced others to infringe, the '366 patent under 35 U.S.C. §§ 271(a)-(c), by making, using, selling, offering for sale, or importing products that infringe the claims of the '366 patent, by offering to sell, selling and/or importing components of the patented apparatus covered by the '366 patent, which constitutes a material part of the inventions claimed in the '366 patent, knowing the same is especially made or especially adapted for use in an infringement apparatus the '366 patent and has no substantial noninfringing use, is not a staple article or commodity of commerce suitable for substantial noninfringing use, and by inducing others to infringe the claims of the '366 patent without a license or permission from Plaintiff.

39.    For example, Google's Accused Instrumentalities included software components that perform the infringing features in combination with specially designed circuitry (e.g., chipsets or other hardware components), which have no commercially significant use other than to enable the infringing features claimed in the '366 patent.

40.    As another example, at least as of the date of this Complaint, Google induced and continues to induce users of the Accused Instrumentalities to use the Accused Instrumentalities, either alone, or together with other devices, in a manner that infringes the '366 patent.

41.     Google has had knowledge of or has been willfully blind to the '366 patent and the infringing nature of the Accused Instrumentalities, at least as of the date of this Complaint. Despite this knowledge, Google actively encourages and instructs their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '366 patent.  Google does so knowing and intending that their customers will commit these infringing acts.  Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '366 patent, thereby specifically intending for and inducing their customers to infringe the '366 patent through the normal and customary use of the Accused Instrumentalities.  On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

42.     Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '366 patent.

43.     Google has induced, and continues to induce, infringement of the '366 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities.

44.     Exhibit 5 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '366 patent.

45.     Plaintiff has been damaged by Google's infringement of the '366 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages, enhanced damages for willful infringement.

12

**COUNT II – INFRINGEMENT OF THE '265 PATENT**

46.    Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

47.    Plaintiff is the sole owner of the '265 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages. The written description of the '265 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.    Plaintiff and its predecessors in interest are not subject to the requirements of 35 U.S.C. § 287(a) with respect to the '265 patent, and Plaintiff is entitled to damages for Google's past infringement.

49.    Google has directly (literally and equivalently) and, at least as of the date of this Complaint,  contributorily infringed, and induced others to infringe, the '265 patent under 35 U.S.C. §§ 271(a)-(c), by making, using, selling, offering for sale, or importing products that infringe the claims of the '265 patent, by offering to sell, selling and/or importing components of the patented apparatus covered by the '265 patent, which constitutes a material part of the inventions claimed in the '265 patent, knowing the same is especially made or especially adapted for use in an infringement apparatus the '265 patent  and has no substantial noninfringing use, is not a staple article or commodity of commerce suitable for substantial noninfringing use, and by inducing others to infringe the claims of the '265 patent without a license or permission from Plaintiff.

50.     For example, Google's Accused Instrumentalities included software components that perform the infringing features in combination with specially designed circuitry (e.g., chipsets or other hardware components), which have no commercially significant use other than to enable the infringing features claimed in the '265 patent.

51.     As another example, at least as of the date of this Complaint, Google induced and continues to induce users of the Accused Instrumentalities to use the Accused Instrumentalities, either alone, or together with other devices, in a manner that infringes the '265 patent.

52.     Google has had knowledge of or has been willfully blind to the '265 patent and the infringing nature of the Accused Instrumentalities, at least as of the date of this Complaint. Despite this knowledge, Google actively encourages and instructs their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '265 patent.  Google does so knowing and intending that their customers will commit these infringing acts.  Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '265 patent, thereby specifically intending for and inducing their customers to infringe the '265 patent through the normal and customary use of the Accused Instrumentalities.  On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

53.     Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '265 patent.

54.    Google has induced, and continues to induce, infringement of the '265 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities.

55.    Exhibit 6 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '265 patent.

56.    Plaintiff has been damaged by Google's infringement of the '265 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages, enhanced damages for willful infringement.

## COUNT III – INFRINGEMENT OF THE '385 PATENT

57.    Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

58.    Plaintiff is the sole owner of the '385 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages. The written description of the '385 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59.    Plaintiff and its predecessors in interest are not subject to the requirements of 35 U.S.C. § 287(a) with respect to the '385 patent, and Plaintiff is entitled to damages for Google's past infringement.

60.    Google has directly (literally and equivalently) and, at least as of the date of this Complaint, contributorily infringed, and induced others to infringe, the '385 patent under 35

15

U.S.C. §§ 271(a)-(c), by making, using, selling, offering for sale, or importing products that infringe the claims of the '385 patent, by offering to sell, selling and/or importing components of the patented apparatus covered by the '385 patent, which constitutes a material part of the inventions claimed in the '385 patent, knowing the same is especially made or especially adapted for use in an infringement apparatus the '385 patent and has no substantial noninfringing use, is not a staple article or commodity of commerce suitable for substantial noninfringing use, and by inducing others to infringe the claims of the '385 patent without a license or permission from Plaintiff.

61.     For example, Google's Accused Instrumentalities included software components that perform the infringing features in combination with specially designed circuitry (e.g., chipsets or other hardware components), which have no commercially significant use other than to enable the infringing features claimed in the '385 patent.

62.     As another example, at least as of the date of this Complaint, Google induced and continues to induce users of the Accused Instrumentalities to use the Accused Instrumentalities, either alone, or together with other devices, in a manner that infringes the '385 patent.

63.     Google has had knowledge of or has been willfully blind to the '385 patent and the infringing nature of the Accused Instrumentalities, at least as of the date of this Complaint. Despite this knowledge, Google actively encourages and instructs their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '385 patent. Google does so knowing and intending that their customers will commit these infringing acts. Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '385 patent, thereby specifically intending for and inducing their customers to infringe the '385 patent through the normal and customary use of the Accused

16

Instrumentalities.  On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

64.    Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '385 patent.

65.    Google has induced, and continues to induce, infringement of the '385 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities.

66.    Exhibit 7 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '385 patent.

67.    Plaintiff has been damaged by Google's infringement of the '385 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages, enhanced damages for willful infringement.

## COUNT IV – INFRINGEMENT OF THE '913 PATENT

68.    Plaintiff incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

69.    Plaintiff is the sole owner of the '913 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages. The written description of the '913 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and

17

improved upon what may have been considered conventional or generic in the art at the time of the invention.

70.    Plaintiff and its predecessors in interest are not subject to the requirements of 35 U.S.C. § 287(a) with respect to the '913 patent, and Plaintiff is entitled to damages for Google's past infringement.

71.    Google has directly (literally and equivalently) and, at least as of the date of this Complaint, contributorily infringed, and induced others to infringe, the '913 patent under 35 U.S.C. §§ 271(a)-(c), by making, using, selling, offering for sale, or importing products that infringe the claims of the '913 patent, by offering to sell, selling and/or importing components of the patented apparatus covered by the '913 patent, which constitutes a material part of the inventions claimed in the '913 patent, knowing the same is especially made or especially adapted for use in an infringement apparatus the '913 patent  and has no substantial noninfringing use, is not a staple article or commodity of commerce suitable for substantial noninfringing use,  and by inducing others to infringe the claims of the '913 patent without a license or permission from Plaintiff.

72.    For example, Google's Accused Instrumentalities include software components that perform the infringing features in combination with specially designed circuitry (e.g., chipsets or other hardware components), which have no commercially significant use other than to enable the infringing features claimed in the '913 Patent.

73.    As another example, at least as of the date of this Complaint, Google induced and continues to induce users of the Accused Instrumentalities to use the Accused Instrumentalities, either alone, or together with other devices, in a manner that infringes the '913 patent.

18

74.     Google has had knowledge of or has been willfully blind to the '913 patent and the infringing nature of the Accused Instrumentalities, at least as of the date of this Complaint. Despite this knowledge, Google actively encourages and instructs their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '913 patent.  Google does so knowing and intending that their customers will commit these infringing acts.  Google also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the '913 patent, thereby specifically intending for and inducing their customers to infringe the '913 patent through the normal and customary use of the Accused Instrumentalities.  On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States.

75.     Google has known, or has been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers, would constitute willful infringement of the '913 patent.

76.     Google has induced, and continues to induce, infringement of the '913 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities.

67.     Exhibit 8 provides a description of the Accused Instrumentalities and a chart showing examples of how they infringe claim 1 of the '913 patent.

78.     Plaintiff has been damaged by Google's infringement of the '913 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages, enhanced damages for willful infringement.

**JURY DEMAND**

79.    Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

**RELIEF REQUESTED**

80.    Plaintiff prays for the following relief:

A.    A judgment in favor of Plaintiff that Google has infringed each of the Asserted Patents, and that each of the Asserted Patents is valid and enforceable;

B.    A judgment and order requiring Google to pay Plaintiff past and future damages arising out of Google's infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest, as provided under 35 U.S.C. § 284;

C.    A judgment and order requiring Google to provide an accounting and to pay supplemental damages to Plaintiff, including, without limitation, any damages not proven at trial, pre-judgment and post-judgment interest;

D.    A judgment that Google's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

E.    A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorney's fees and costs; and

F.      Any and all other relief to which Plaintiff may be entitled.

Dated: June 9, 2026                                    DEVLIN LAW FIRM LLC


                                                       /s/ Timothy Devlin
                                                       Timothy Devlin
                                                       tdevlin@devlinlawfirm.com
                                                       Brian Tollefson
                                                       btollefson@devlinlawfirm.com
                                                       Derek Dahlgren
                                                       ddahlgren@devlinlawfirm.com
                                                       1526 Gilpin Avenue
                                                       Wilmington, DE 19806
                                                       Telephone: (302) 449-9010
                                                       Facsimile: (302) 353-4251


                                                       *Attorneys for Plaintiff EncryptPat LLC*